Kenneth Ray SMITH *v.* STATE of Arkansas

CR 00-1201                                              55 S.W.3d 251

Supreme Court of Arkansas
Opinion delivered September 20, 2001

*William R. Simpson, Jr.*, Public Defender, by: *Pamela A. Epperson*, Deputy Public Defender.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant, Kenneth Ray Smith, was charged with committing the offenses of breaking or entering the K-Mart store located on Asher Avenue in Little Rock on August 3, 1999, with the purpose of committing a theft, in violation of Ark. Code Ann. § 5-39-202 (Repl. 1997), and theft of property by taking or exercising unauthorized control of a firearm, valued at less than $2500.00, belonging to K-Mart, in violation of Ark. Code Ann. § 5-36-103 (Repl. 1997). On March 8, 2000, appellant was convicted by a jury of breaking or entering, but he was acquitted of the theft of property charge. At the close of the sentencing phase, the jury sentenced appellant, as an habitual offender, to fifteen years in the Arkansas Department of Correction. Appellant now appeals his breaking or entering conviction.

At trial, the State produced a videotape and three witnesses as evidence in its case-in-chief. The videotape, which focuses on a gun display case, is taken in the sporting-goods department of K-Mart. The videotape reveals appellant passing in front of the gun cabinet six times. Appellant is first seen behind the counter in front of the gun case, and, while obscured by a sign on the right side of the screen, he stops briefly in front of the gun case and leaves. He later returns to the front of the counter from a shopping aisle. He walks in front of the counter three more times, looking at the gun case each time. It appears that he passes by the cabinet several times in order to see whether it is locked. Appellant is then seen behind the counter again and leaves. Appellant next appears a sixth time behind the counter. He looks back and forth two or three times, opens the glass door to the display case, removes a gun from the middle of the rack, and leaves to the left of the screen with the gun. In this sequence, the cabinet appears to open easily. Appellant does not appear to manipulate a lock; he merely opens the cabinet door and takes the gun out.

James Dickson, a detective for the Little Rock Police Department, testified that he assisted in the investigation of a breaking or entering and theft of a rifle from K-Mart. He testified that the videotape had been given to the police department by the K-Mart security officer. He further testified that the videotape had been maintained in the property room at the Little Rock Police Department, and that it was in the same or substantially similar condition as when he initially received it.

Cody Porter, a loss-control manager for K-Mart, testified that, on August 3rd or 4th, he was working at the K-Mart on Asher. He testified that his duties include watching the surveillance cameras for shoplifting and watching employees for employee theft. He further testified that K-Mart on Asher sells shotguns that are stored in the sporting goods department in a locked cabinet behind a cash register. He described the cabinet as having sliding glass doors that lock at the bottom with a multiple key. The general public is not allowed access to the cabinet, and an employee who has a key must assist a customer who wants access to a gun. He testified that customers, of course, are not allowed access to the guns without an employee present.

Mr. Porter further testified that a video surveillance camera was set up in the sporting goods department on August 2nd and August 3rd of 1999. The tape had run for approximately twenty-four hours, but no one was watching the video as it was being taped. Mr. Porter testified that he believed the locks had not been checked since August 2, 1999.

On August 4, 1999, Mr. Porter was notified that a gun was missing from the K-Mart inventory. He then reviewed the video-tape of the surveillance of the sporting goods department. The videotape was played at trial during Mr. Porter's testimony. He testified that appellant was never given permission to open the cabinet. Mr. Porter testified that he believed appellant was able to get the gun cabinet open by prying the glass over the locked case. He determined that the glass had been pried "over the lock case that has the little lock on the bottom." He further explained that "[t]he glass case was moved out over the lock where it could be entered into." On cross-examination, Mr. Porter explained that the gun cabinet is always locked unless an employee unlocks it. Once the employee unlocks the case, the key cannot be removed from the lock. On redirect examination, Mr. Porter stated that the lock on the gun cabinet is about waist high, or three to four feet off the ground. He testified that a person would not have to bend down to touch the lock. No employees were present in the sporting goods department at the time to monitor the customers' actions. Mr. Porter testified that the gun missing from the inventory was a 30.06 rifle.

Alvin Jackson, a Little Rock police officer, testified that he was on duty on August 4, 1999. On that day, he responded to a call from K-Mart to meet with Mr. Porter to review the tape of an alleged theft the day before. Mr. Jackson testified that while he

reviewed the tape, he received information that appellant might be present in the store. He made contact with appellant, who was not acting suspicious, was cooperative, and did not attempt to flee. Mr. Jackson testified that appellant, the man whom he apprehended in the store on August 4th, appeared to be the same person in the video surveillance tape.

After the State's case-in-chief, appellant moved for a directed verdict, arguing that there was no evidence that he unlawfully broke into or entered K-Mart. Appellant also moved for a directed verdict on the theft of property charge. The trial court denied both motions on the grounds that there was evidence that appellant entered the store with the intent to commit a theft. Appellant did not present a case-in-chief. After resting, appellant renewed his earlier directed-verdict motions on the same grounds. The trial court again denied the motions. The jury found appellant guilty of breaking or entering, but not guilty on theft of property. Appellant appeals his conviction of breaking or entering the K-Mart store.

For his sole issue on appeal, appellant argues that the trial court erred in denying his motion for a directed verdict based upon the sufficiency of the evidence. Specifically, he argues that the State failed to introduce substantial evidence to sustain the jury's verdict finding him guilty of breaking or entering.

■■■ A motion for directed verdict is a challenge to the sufficiency of the evidence. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Dixon v. State*, 310 Ark. 460, 470, 839 S.W.2d 173 (1992). Only evidence supporting the verdict will be considered. *Moore v. State*, 315 Ark. 131, 864 S.W.2d 863 (1993). Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999). Such a determination is a question of fact for the fact-finder to determine. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993).

■ Viewing the evidence in light most favorable to the State under *Dixon, supra,* we turn to the question whether there was substantial evidence to sustain appellant's conviction of breaking or entering the K-Mart store. Arkansas Code Annotated § 5-39-202(a) (Repl. 1997) provides:

> *5-39-202. Breaking or entering.*
>
> (a) A person commits the offense of breaking or entering if for the purpose of committing a theft or felony he enters or breaks into any building, structure, vehicle, vault, safe, cash register, money vending machine, coin-operated amusement or vending machine, product dispenser, money depository, safety deposit box, coin telephone, coin box, fare box on a bus, or other similar container, apparatus, or equipment.

*Id.*[1] Here, appellant "entered" the store during regular business hours. His photograph, captured by the surveillance camera, is clear and distinct. This evidence was sufficient to support the jury's determination that he had entered the store.

■■ The remaining question is whether appellant had the "purpose" to commit a theft when he entered K-Mart. A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *E.g., Steggall v. State,* 340 Ark. 184, 194, 8 S.W.3d 538, 545 (2000). Here, appellant's purpose to commit a theft is proven by circumstantial evidence. The jury viewed a surveillance tape that shows appellant taking a gun from a gun cabinet in the sporting goods department of K-Mart. This videotape shows appellant approaching the gun cabinet six times, and walking around and behind the counter three times. The surveillance tape shows appellant during his last intrusion behind the counter, as he looked back and forth two or three times, opened the glass door to the display case, removed a gun, and walked away. Based upon the surveillance video of appellant's actions before and at the time he took the gun from the display case, there was sufficient evidence for the jury to infer that his purpose in entering K-Mart was to commit a theft.

---

[1] Appellant argues that to commit breaking or entering, one must "unlawfully" enter a building with the purpose of committing a theft. This argument is misplaced, as there is no "unlawful" element in Ark. Code Ann. § 5-39-202. The word *unlawfully* appears in the burglary statute found at Ark. Code Ann. § 5-39-201, which specifically defines burglary in terms of entering or remaining in a structure unlawfully. *See* Ark. Code Ann. 5-39-201 (Repl. 1997).

This circumstantial evidence of appellant's culpable mental state constitutes substantial evidence to sustain a guilty verdict. *Steggall, supra.*

Appellant argues that because he was acquitted of the theft of property charge, he could not have possessed the intent to commit theft in the K-Mart store. However, this argument runs contrary to our case law. The law is clear that "a defendant may not attack his conviction on one count because it is inconsistent with an acquittal on another count. . . . [T]he jury is free to exercise its historic power of lenity if it believes that a conviction on one count would provide sufficient punishment." *McVay v. State,* 312 Ark. 73, 77, 847 S.W.2d 28, 30 (1993) (quoting *United States v. Romano,* 879 F.2d 1056 (2d Cir. 1989)).

We hold that there was substantial evidence to support appellant's conviction of breaking or entering into the K-Mart store. Accordingly, the trial court's denial of appellant's motion for directed verdict is affirmed.

Affirmed.