James FIELDS *v.* STATE of Arkansas

CR 01-127                                   76 S.W.3d 868

Supreme Court of Arkansas
Opinion delivered June 6, 2002

*Horace A. Walker*, for appellant.

*Mark Pryor*, Att'y Gen., by:  *O. Milton Fine II*, Ass't Att'y Gen., for appellee.

W. H."DUB" ARNOLD, Chief Justice.  Appellant James Fields was found guilty of one count each of aggravated robbery, first-degree battery, aggravated assault, and theft of property by a Pulaski County Circuit Court jury.  The trial court sentenced Fields to concurrent sentences of life imprisonment, forty years' imprisonment, fifteen years' imprisonment, and thirty years' imprisonment for the respective offenses.  Fields appeals to this court from that judgment, and Fields challenges the admission

of the photographic lineup into evidence and the sufficiency of the evidence. We hold that the argument regarding the pretrial photo lineup identification is barred and affirm the trial court on sufficiency of the evidence.

On July 7, 1998, Tires For Less, a Little Rock tire store, was robbed when Fields entered the business with a gun. The assistant manager was shot, and another person was threatened with a gun. Fields was later identified as one of the robbers through pretrial photographic lineups and in-court identification.

*Sufficiency of the Evidence*

Fields, in his second point on appeal, contends that the trial court erred in denying his motion for a directed verdict. A directed-verdict motion is a challenge to the sufficiency of the evidence. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995); *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993). As such, it must be addressed by this court before any other points on appeal. *Goins, supra*; *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994).

It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001) (citing *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995)). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id.* Only evidence supporting the verdict will be considered. *Smith*, supra.

After the State rested in the present case, counsel for Fields moved for a directed verdict based on the fact there was no evidence produced linking Fields to the robbery. Subsequently, after the close of all the evidence, counsel for Fields renewed his motion for directed verdict. The trial court denied both motions.

At Fields's trial, Steven Watt testified that he was an assistant manager at Tires For Less, and at around 4:30 to 4:40 p.m., on July 7, 1998, he was at his desk getting ready to close the business. Watt testified that he heard someone at the window in front of him ask for money. Watt looked up and saw a man with a gun. Watt looked at the individual again, who said, "Do you think I'm playing," and pulled the trigger, and the bullet struck Watt in the upper left chest. About three or four days after this incident, detectives visited Watt at his home. Watt identified Fields from a photographic lineup. Watt was adamant that no one suggested a choice when he viewed the photographic lineup. In fact, after Watt identified Fields, the detective told him to take his time, look the lineup over, and make sure. Watt, also, made an in-court identification of Fields at trial, stating that he was "absolutely positive" that Fields was the shooter. Watt stated that he was "one hundred percent certain" of the identification, and he recalled that the perpetrator had a face that he would never forget. He stated that the window that he viewed Fields through is probably twenty-four to twenty-six inches wide and around three feet tall, and that he saw Fields from the chest up.

Patrick Mahoney, also, testified at Fields's trial. He testified that on July 7, 1998, he was fourteen years old and helping Steven Watt, his stepfather, at work at Tires For Less. Patrick testified that at approximately 4:30 to 4:45 p.m., two individuals drove up in a black car. One of the individuals stood by the garage door while the other came in and said "This is a robbery." Patrick stated that the individual pointed a gun at him and warned him not to move. The individual then went to the window where Watt was working, shot him, retrieved money from an office, and ran out of the building. Patrick testified that he observed the shooter walking from inside the garage door to where Watt's office was.

Patrick Mahoney further testified that detectives came to his house on July 10, 1998, regarding the incident at Tires For Less. Patrick was able to identify Fields from a photo lineup that the detectives presented to him. Patrick was also able to positively identify Fields at trial.

Richard Stewart, a customer in Tires For Less at the time of the robbery and shooting, testified at trial that a man walked into the store about ten to twelve feet from him, pulled a weapon out of a bag, and announced that a robbery was taking place. Stewart followed the robber to the front of the store and about a minute later, a shot rang out. Stewart told the trial court that he saw the robber run into the office, pick up a bank bag, and leave the store. Some time after the shooting, Stewart was shown a photographic lineup, and he was able to make an identification of Fields with one hundred percent certainty.

John Mahoney was working at Tires For Less on the day of the robbery. While watching television, he heard someone state, "Give me the money," and, then, heard a gunshot. The robber then ran in and asked John where the money was, and John told him. John stated that he was able to get a good look at the perpetrator, and he was able to give a description of the robber to the police. John was later shown a photograph of the robber and was able to identify him. John stated that he picked the photograph of Fields as the culprit. John, also, identified Fields from the stand at trial.

Appellant Fields argues to this court that the evidence at trial was not sufficient to support the guilty verdicts. However, the State presented three witnesses to the robbery and shooting that correctly selected Fields as the perpetrator from a photographic lineup. Further, four witnesses correctly identified Fields as the perpetrator from the stand at trial. Therefore, we affirm the trial court in denying Fields's motions for directed verdict because there was evidence forceful enough to compel a conclusion of guilt.

### Pretrial Photographic Identification

Appellant Fields argues that the trial court erred in allowing into evidence the pretrial photographic lineup. The trial court ruled, after a pretrial hearing, that the photo lineup used by the police was not overly suggestive and the identifications could be

admitted at trial. Fields contends that the photo lineup should have been excluded because the photo lineup had dissimilar looking persons. In particular, Fields was the only person with short hair in the lineup.

■ ■ A pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *King v. State*, 323 Ark. 558, 916 S.W.2d 725 (1996); *Monk v. State*, 320 Ark. 189, 895 S.W.2d 904 (1995); *Bishop v. State*, 310 Ark. 479, 839 S.W.2d 6 (1992). But even when the process is suggestive, the circuit court may determine that under the totality of the circumstances the identification was sufficiently reliable for the matter to be decided by the jury. *Neil v. Biggers*, 409 U.S. 188 (1972); *Monk v. State, supra*; *Bishop v. State, supra*. In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Hayes v. State*, 311 Ark. 645, 846 S.W.2d 182 (1993); *Van Pelt v. State*, 306 Ark. 624, 816 S.W.2d 607 (1991); *Bowden v. State*, 297 Ark. 160, 761 S.W.2d 148 (1988); see also *Neil v. Biggers, supra*.

■ It is appellant's burden to show that a pretrial identification was suspect. *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992). When, as here, the photographic identification is followed by an eyewitness identification at trial, this court will not set aside the conviction unless the photographic lineup was so suggestive as to create a substantial possibility of misidentification. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995). In *Goins*, the court held that an identification issue was not preserved for review where, despite challenging a pretrial photographic identification, the appellants failed to object to the victim's in-court identification of them. *Goins, supra*. A contemporaneous objection is

required to preserve an issue for appeal. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002).

██ Here, the issue was not preserved for appeal, and, is therefore barred. Three eyewitnesses identified Fields from the stand as the person who committed the robbery and shooting. Fields did not object to these in-court identifications. Therefore, the photo lineup identification point on appeal is barred.

### Rule 4-3(h)

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for adverse rulings objected to by Fields but not argued on appeal and no error is found.

In sum, in light of the evidence presented to the jury, we cannot say that the trial committed error in this case. Accordingly, we find no reversible error in the trial court's rulings. We affirm the trial court and Fields's judgment of conviction.

Affirmed.

GLAZE and BROWN, JJ., concur.

IMBER, J., not participating.

ROBERT L. BROWN, Justice, concurring. This appeal involves a sentence of life in prison. I concur with the majority on the merits of this appeal but write to emphasize my concern over the deficient performance of Field's counsel in preparing appellant's brief. On two separate occasions, the State filed motions regarding counsel's deficient abstracting prior to the submission of the case. On December 6, 2001, the State first moved for this court to direct Fields to comply with Arkansas Supreme Court Rule 4-3(h). We granted that motion. On February 26, 2002, Field's counsel advised this court that he was "standing by" his original brief. As a result, on March 1, 2002, the State filed a second motion to compel Field's compliance with Rule 4-3(h). We denied that motion, and ordered the State to abstract the

adverse rulings, as the rule requires. The State did so, and the case has now been submitted for our decision.

Arkansas Supreme Court Rule 4-3(g) requires that in a felony case, it is the appellant's duty to abstract and include in the addendum those parts of the record material to the points to be argued in the appellant's brief. Rule 4-3(h), which applies to death and life-imprisonment cases, dictates that the appellant "must abstract . . . all rulings adverse to him or her made by the circuit court on all objections, motions and requests made by either party, together with such parts of the record as are needed for an understanding of each adverse ruling." Appellant, in this case, did neither. He merely abstracted the testimony from the suppression hearing involving the photo lineup and the eyewitness identification testimony at trial. He failed to abstract his motion to suppress the photo lineup, the photo lineup itself, his motion for directed verdict, or the trial court's rulings on the motions. Had the State not provided a supplemental abstract, per our order to abstract all adverse rulings not abstracted by the appellant pursuant to Arkansas Supreme Court Rule 4-3(h), this court could not have reached the merits of this appeal and rebriefing would have been required. We still were never provided the actual photographs that made up the photo lineup as our rules require. *See* Sup. Ct. R. 4-2(a)(5).

After reviewing the State's supplemental abstract and the appellant's abstract, it is evident that appellant's counsel neglected his duty to properly abstract the record pursuant to our rules. For the foregoing reasons, I would refer defendant's counsel to the Committee on Professional Conduct. *See McGehee v. State*, 327 Ark. 88, 937 S.W.2d 632 (1997) (*per curiam*).

GLAZE, J., joins.