Jeffery Steele FORGY *v.* STATE of Arkansas

CA CR 85-93                                   697 S.W.2d 126

Court of Appeals of Arkansas
Division I
Opinion delivered October 16, 1985

*Richard E. Holiman*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Jeffery Steele Forgy appeals from his conviction of aggravated robbery for which he was sentenced to ten years in the Arkansas Department of Correction. He contends the trial court erred in refusing to suppress all evidence of identification and in refusing to dismiss the charge because of unreasonable delay in execution of the arrest warrant. We find no merit in these contentions.

On September 17, 1982 Eddie Brickell, a pharmacist employed by Price Pharmacy, reported a robbery at the store. He testified that a man had entered the store and forced another employee, Jerry Webb, into the back of the store before demanding that Brickell fill a pillow case with prescription drugs. The assailant then fled through the back door of the store. Brickell testified that the man was in the store for about fifteen minutes, the lighting was good, and that he had been within four feet of the

assailant during the robbery. He gave a description of the assailant to the police and subsequently identified the appellant from a photo spread of six photographs. Police officers testified that Jerry Webb also identified the appellant from the same photo spread. During the trial Brickell positively identified the appellant and Webb stated there was "a 95% possibility that appellant was the robber."

■ Appellant first contends that the trial court erred in failing to suppress the prior identification of the appellant by Brickell and Webb. He claims the identification was the result of an unduly prejudicial, defective identification procedure and was impermissibly suggestive. Generally a witness may testify to a previous identification and relate when and where the identification took place. A police officer or other person who was present and familiar with the circumstances may also testify concerning the identification.

John Clark, an investigator for the Jacksonville Police Department, testified that he prepared a photo lineup containing six photographs which he gave to Officer Moore to use in his investigation. Officer Moore testified that the lineup was composed of six photographs. Each photograph was taped behind a cutout 1½ inches by 2 inches in size. There was no police identification on the photographs. He stated that appellant's photograph had been located in the middle of the bottom row. Moore testified that he exhibited the photo lineup to Brickell and Webb. Both witnesses made a positive identification of the appellant as the robber. The six photographs used in that identification were introduced into evidence.

■ Brickell testified that when the photo lineup was shown him he was told that the officers might have a suspect and was asked if he could identify any one of the photographs. He further testified that his identification of the appellant was positive and based on his observations made during the time of the robbery and without suggestion by the police. The trial court overruled the motion to suppress the identification testimony and we find no error.

■■ It is for the trial court to determine if there are sufficient aspects of reliability surrounding an identification to permit its use as evidence, and then it is for the jury to determine

what weight the identification testimony should be given. *Wilson v. State*, 282 Ark. 551, 669 S.W.2d 889 (1984). The suppression of an in-court identification is not warranted unless the pretrial identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification.

■ In *Bell v. State*, 6 Ark. App. 388, 644 S.W.2d 601 (1982) we declared that the factors to be considered in testing the reliability of lineup identification included the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. The evidence shows that both witnesses had ample opportunity to view the appellant at the time of the crime. Both witnesses were able to give a detailed description of the robber to the police immediately after the robbery and there is nothing in the record to show that their description was inaccurate. Both witnesses positively identified the appellant as the robber in a photo lineup within six weeks of the robbery with no suggestion or encouragement from the police to do so.

The appellant's argument that the officers failed to illustrate the placement of the photographs and that a photograph was missing is not supported by the record. Officer Moore explained exactly how the lineup was composed and the care that was taken to make the photographs appear to be the same size and with no identification information showing. Although there was some indication that one of the photographs used in the photo spread was not introduced, the testimony of Officer Moore was that there were six photographs in the photo spread. Six photographs were introduced into evidence.

■ Appellant argues that the officer's statement to Brickell before he viewed the lineup was improper. The witness denied that the officer made any suggestion or influenced him in any way. He was simply told that the police had a suspect and asked if he could identify anyone in the lineup. In *Freeman v. State*, 6 Ark. App. 240, 640 S.W.2d 456 (1982) the court declared that merely telling a witness that a suspect is in the lineup is not absolutely impermissible. The court recognized that the witness must realize that he would not be asked to view a lineup if a suspect was not

present. What the witness is told may be only one factor to consider in reviewing the total surrounding circumstances.

On review this court views the totality of the circumstances to ascertain the reliability of identification witnesses' testimony. *Whitfield* v. *State*, 8 Ark. App. 329, 652 S.W.2d 42 (1983). Viewing the totality of the circumstances surrounding the pretrial lineup in light of the factors set out in *Bell* we conclude that the decision of the trial court is not clearly erroneous and should be affirmed.

The appellant also contends that the witnesses' in-court identification should have been suppressed because it was prejudicially tainted by pretrial occurrences. We have found nothing which tainted the pretrial identification and the suppression of an in-court identification is not warranted unless the pretrial one was so suggestive as to create a substantial likelihood of irreparable misidentification.

Both eye witnesses to the robbery were able to identify the appellant in court based on the observation of him during the robbery. Both stated that they were not influenced by their earlier identification and their in-court identification was based on their observations at the time of the robbery.

The robbery occurred on September 17, 1982. A warrant for appellant's arrest was issued on October 26, 1982. The appellant was not arrested until March 14, 1984. Two days before the trial the appellant moved that the warrant be quashed and the charge dismissed because the delay in bringing him to trial had denied him due process. The trial court denied the motion.

Aggravated robbery is a class "Y" felony for which the statute of limitations is six years. Ordinarily where an indictment is returned within the period of limitations due process considerations do not arise. The statute of limitations, however, defines only the outer limits of prosecution beyond which there is an irrebuttable presumption that a defendant's right to a fair trial has been prejudiced. Within the guidelines of the statute of limitations the due process clause still has a limited role to play in protecting against oppressive delay which prejudices a defendant's rights. These rights are discussed in our recent opinion of *Young* v. *State*, 14 Ark. App. 122, 685 S.W.2d

823 (1985). In *Young* we held that the due process considerations do not arise until prejudice resulting from the delay is proven and it further appears that the State intentionally delayed the proceedings to gain some tactical advantage over the accused. *Scott* v. *State*, 263 Ark. 669, 566 S.W.2d 737 (1978); *Bliss and Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984). In *Young* we declared that mere delay is not sufficient grounds for aborting a criminal prosecution. The accused has the burden of first showing prejudice resulting from loss of witnesses, physical evidence or dimming of memory, and how that loss is prejudicial to him. If the defendant establishes such prejudice, the burden is then upon the prosecutor to give a satisfactory reason for the delay.

In *Young* and the cases cited within it, the court dealt with delay in obtaining an indictment rather than the execution of a warrant issued on probable cause. However, the due process considerations are the same in either case and the courts have applied the same principles to both situations. *U.S.* v. *Ewell*, 383 U.S. 116 (1966); *U.S.* v. *Scully*, 415 F.2d 680 (1969). Accommodating the administration of justice and the accused's right to a fair trial necessarily requires a delicate balancing of the reason for the delay against the resulting prejudice based on the circumstances of each case. *U.S.* v. *Marion*, 404 U.S. 307 (1971).

In the present case, the appellant denied having committed the robbery and testified that due to the passage of time he would be unable to establish his whereabouts on the day of the crime. This was a sufficient showing of prejudice to shift the burden to the State to explain the delay. The officers testified that at the time the identification was made and the warrant was issued they had no address for the appellant. They had attempted to locate the appellant by other means including the questioning of witnesses to the crime and a woman who knew the appellant. The officer stated that the woman told him that her husband and the appellant had left town without leaving any address. The officer testified that examining the telephone books had failed to disclose the whereabouts of the person they sought.

The appellant testified that he was in the Little Rock area during 1982 and 1983 but had no telephone listed in his name until late 1983. The listing would not appear in a telephone book

until some time the following year. His only relative with a telephone had a different last name. He stated that he had moved a number of times during that period, living with friends, and had no utilities connected in his own name. During this period he had no steady job and could think of no one who saw him daily during that period. There is no evidence that the State delayed the proceedings to gain a tactical advantage. We cannot conclude that the State did not satisfactorily explain the delay.

Affirmed.

CLONINGER and MAYFIELD, JJ., agree.